# IN THE COURT OF APPEALS OF IOWA

No. 22-1734
Filed April 10, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TOMMY QUINN JR.,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, Judge.

A defendant appeals the waiver of his right to counsel. **AFFIRMED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Pleasant Hill, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**BOWER, Chief Judge.**

Tommy Quinn Jr. appeals his conviction for assault causing bodily injury, alleging his waiver of counsel was not knowing and intelligent as required by the Sixth Amendment.[1]  Because the court engaged in a meaningful colloquy with Quinn regarding his desire to waive counsel and proceed with standby counsel, we affirm.

## I.    *Background Facts and Proceedings*

In the early-morning hours of December 19, 2021, Quinn was involved in a fight with his paramour, Decembra Roberts.  The specific details regarding the altercation that led to the arrest are not at issue on appeal.  Quinn was subsequently arrested and charged with assault causing bodily injury.  Quinn entered a plea of not guilty.

On the day of the pretrial conference, Quinn requested court-appointed counsel.  The district court appointed the state public defender to represent Quinn and specifically noted the appointment was for "stand by counsel."  The originally appointed counsel withdrew due to an excessive caseload, and the court appointed another attorney to represent Quinn.  The trial was then rescheduled from April 2022 to August 15, 2022.

Quinn's newly appointed attorney filed a motion to withdraw as counsel at the final pretrial conference on August 11, 2022.  In the motion to withdraw, counsel

---

[1] To the extent Quinn claims his rights under the Iowa Constitution were also violated, he has not argued article 1, section 10 of the Iowa Constitution should be interpreted differently than the Sixth Amendment to the United States Constitution, so "we construe the provisions identically."  *State v. Shipley*, 757 N.W.2d 228, 234 (Iowa 2008).

highlighted Quinn's reluctance to discuss his case as the primary reason for the request. On the day of trial, the court discussed on the record with Quinn his desire to represent himself. The court had the following exchange concerning Quinn's request to proceed pro se or with standby counsel:

> Q. [COURT] It looks like the motion to withdraw was filed on Thursday. Was that at your request; did you want her to withdraw?
> A. [QUINN]: Yes, I did.
> Q. Have you talked to her since and changed your mind at all?
> A. No, I have not.
> Q. Okay, so why do you want to fire your attorney?
> A. Well, I didn't hire one even to begin with. But I just want to get up here, plead my case, and if I go to jail, I go to jail.

The court then explained to Quinn the benefit of an attorney at trial and available options:

> Q. Okay. Well, you've asked to have a trial, so the State is going to have to prove the case against you beyond a reasonable doubt.
> A. Yes, understandable.
> Q. They'll probably call witnesses. They may even have some exhibits, you know, pictures or videos or some hard evidence of some sort. And attorneys are handy to know what to object to and what not to object to. That is testimony, like hearsay is sometimes hard to identify. Some people have no problems, but some of it is a little harder to identify right off the bat, and attorneys can often see that as it's coming in and object before it comes in. You have really three choices. You can have the attorney represent you. You can have the attorney not represent you. But there's a third choice that's in between the two, and that's where you have an attorney but they are called standby counsel. So they would stand by you or sit by you, and if you had a question of if, like, there's something objectionable coming in, she'd probably tug on your sleeve and go—
> A. I requested—in the very beginning I requested standby counsel.
> Q. Okay.

Quinn then explained he was confused with logistical aspects of the proceedings on the day of trial but reaffirmed his desire for standby counsel to be present.

A. [QUINN] But when I got here Thursday there was so much confusion that it seemed like, that wasn't on my part, that I just rejected counsel period.

Q. Uh-huh. So you want standby counsel?

A. I requested it at the beginning, but—and then I got here today, and I'm in courtroom 7 from a quarter till 1 until I go somewhere else and go—

Q. We were going to have a jury trial in this room, but the person ended up pleading, so they switched it to my calendar—

A. Understandable but—

Q. —and then they moved you. Okay.

A. There was just so much confusion going on, I—I figured if I'm going to be confused, I would rather confuse myself.

Q. Okay. All we did was move the courtroom—

A. But even before—

Q. —we would have looked upstairs—

A. Yes, I understand.

[COURT REPORTER] I can only take one person at a time.

Q. So did you want standby counsel; yes or no?

A. Yes, I'll take it.

The court then engaged in discussions with Quinn regarding his ability to represent himself at trial. Quinn reassured the court of his ability and desire to represent himself based on his background studying to be a paralegal and his perception of court-appointed attorneys who had represented him in the past. Further, Quinn shared he has an associate's degree and runs his own business.

During the trial, Quinn was articulate; well-reasoned in his answers; and knowledgeable about the trial process, his rights and responsibilities, and his defense. Following the bench trial, the court found Quinn guilty of assault causing bodily injury. On appeal, Quinn requests a new trial on grounds the court did not determine he made a knowing and intelligent waiver of his right to counsel.

## II.    Standard of Review

We review de novo a defendant's claim their Sixth Amendment right to counsel was violated. *State v. Martin*, 608 N.W.2d 445, 449 (Iowa 2000).

### III. Discussion

On appeal, Quinn contends the district court failed to establish his decision to represent himself at trial was knowing, voluntary, and intelligent.

The Sixth Amendment of the United States Constitution affords a defendant a right of self-representation. *State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997). "[T]he right of self-representation is not effective until asserted." *Id.* "[B]efore a trial court honors an accused's request to waive the right to counsel, it must satisfy itself the defendant's election is voluntary, knowing, and intelligent." *State v. Stephenson*, 608 N.W.2d 778, 782 (Iowa 2000). The court must engage in a "meaningful colloquy" to determine whether a waiver of counsel is "competent and intelligent." *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000).

A sufficient colloquy will necessarily discuss "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id.* In addition, the defendant must be "admonished as to the usefulness of an attorney at that particular proceeding and, made cognizant of the danger in continuing without counsel." *Id.*

In this case the court conducted a sufficient, meaningful colloquy to ensure Quinn knowingly waived his right to counsel. *See id.* The court discussed with Quinn his reason for asking his attorney to withdraw. The court then discussed with Quinn the usefulness of an attorney and presented his options of having an attorney, having standby counsel, or proceeding pro se. *See id.* During the discussion, the court inquired about Quinn's age, education level, and occupation.

Furthermore, the court engaged in discussion with Quinn prior to the start of trial regarding the nature of the charges, including the lesser-included charges, and a plea offer, which Quinn rejected. This inquiry by the court is ample to determine Quinn knowingly and intelligently waived his right to counsel.

Quinn points to his confusion regarding what courtroom his trial would be in to support his claim his decision to waive counsel was not done knowingly and intelligently. During the dialogue where Quinn discussed his confusion about which courtroom the case would be tried, Quinn stated he had requested standby counsel since the beginning of the proceedings and then later reaffirmed his desire for standby counsel when asked directly by the court, further showing his waiver was knowing and voluntary.

Quinn also argues the appointment of standby counsel is insufficient to satisfy his Sixth Amendment right to counsel when it has been violated. Quinn relies on our supreme court's holding in *Rater*, which held, "the appointment of stand-by counsel is insufficient to satisfy the Sixth Amendment right to counsel when the court has failed to conduct an inquiry to ensure the defendant's waiver of that right was knowing and intelligent." 568 N.W.2d at 661. However, *Rater* is distinguishable from the present case. In *Rater*, there was no colloquy between the court and the defendant advising defendant he was entitled to counsel or warning defendant of the risks of self-representation. *Id.* at 659. Here, as discussed above, the district court engaged in a meaningful colloquy. *See Cooley*, 608 N.W.2d at 15. Furthermore, in *Rater* the defendant never made it clear he wanted to represent himself, instead he repeatedly told the court he felt unqualified to represent himself. *Rater*, 568 N.W.2d at 661–62. Here, the defendant was

initially appointed standby counsel, never changed his position regarding standby counsel, and had standby counsel present at trial.

Upon review of the record, we determine the court properly decided Quinn's waiver of his right to counsel was knowing, voluntary, and intelligent. *See Cooley*, 608 N.W.2d at 14.

**AFFIRMED.**